# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| In re:<br><br>HIGHLAND CONSTRUCTION<br>MANAGEMENT SERVICES, LP,<br><br>　　　　Debtor. | Case No.　11-11413-RGM<br>(Chapter 11) |
| HIGHLAND CONSTRUCTION<br>MANAGEMENT SERVICES, LP,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WELLS FARGO, N.A. f/b/o JEROME<br>GUYANT IRA,<br><br>　　　　Respondent.. | Contested Matter<br>(Objection to Proof of Claim) |

## MEMORANDUM OPINION

THE ISSUE presented is the effect of a financing statement that lapses after the filing of a petition in bankruptcy.  Wells Fargo, N.A. f/b/o Jerome Guyant IRA ("Guyant") filed Proof of Claim 4 asserting that it held a claim secured by the debtor's interests in two Virginia limited liability companies.  The debtor objected, not to the amount of the claim, but to the asserted secured status.

The facts are not disputed.  Guyant loaned the debtor more than a million dollars starting on December 22, 2005.  The loan was secured by the debtor's interest in two Virginia limited liability companies.  The initial financing statement was filed on October 11, 2006.   When the note became in default, Guyant sued the debtor and obtained a judgment on October 5, 2010, for $1,082,000.00 and a declaration that he held a perfected security interest in the debtor's interest in the two limited

liability companies.  A writ of *fieri facias* was issued the same day.[1]   Other than the issuance of the

writ, no execution was commenced by Guyant on his judgment.[2]   The debtor filed a petition in

bankruptcy pursuant to chapter 11 of the Bankruptcy Code on February 28, 2011.  On October 10,

2011, the financing statement lapsed because no continuation statement was filed.

The parties are in agreement that on the day the petition in bankruptcy was filed, Guyant had

a first lien on the two membership interests pursuant to his security agreement which was properly

perfected by the October 11, 2006 financing statement.

The parties did not stipulate, but the court finds, that Guyant held a second priority lien

arising from the writ of *fieri facias* on October 5, 2010.  This lien related back to the date of the

original financing statement, October 11, 2006. Va.Code (1950) §8.9A-311(b); UCC §9-311(b).

The third priority is the debtor-in-possession as a hypothetical lien creditor pursuant to

§544(a)(1) of the Bankruptcy Code.  The relevant portion of this section states as follows:

> The trustee shall have, as of the commencement of the case, and without regard to
> any knowledge of the trustee or of any creditor, the rights and powers of  .   .   .
>
> (1)  a creditor that extends credit to the debtor at the time of the commencement of
> the case, and that obtains, at such time and with respect to such credit, a judicial lien
> on all property on which a creditor on a simple contract could have obtained such a

---

[1]Guyant's Proof of Claim is not clear that he claims a judicial lien arising from a writ of *fieri facias*.  He states in his Proof of Claim that he "issued a Writ of Fieri Facias, and as a result, under Virginia law, has a lien on *other property* of the Debtor, the value of which is unknown."  Supplement to Proof of Claim at ¶4 (emphasis added).  The court assumes that he asserts a judicial lien arising from a writ of *fieri facias* in the debtor's interests in the two limited liability companies.  The mere entry of a judgment does not create a lien.

The record is not clear when the writ of *fieri facias* was issued or whether is was delivered to the sheriff a necessary act to create the lien. Va.Code (1950) §8.01-501.  In Virginia, they are typically issued by the Clerk of the Circuit Court shortly after a judgment is entered.  In this case, it would have been issued on or after October 5, 2010 but before the filing of the petition in bankruptcy on February 28, 2011.  The precise date within that time frame is not critical to the this court's analysis in this case.  Unless one of the parties requests that further evidence be taken on this issue, the court will treat it as conceded that the writ of *fieri facias* was issued on and delivered to the sheriff on October 5, 2010.

[2]

judicial lien, whether or not such a creditor exists.

The fourth priority is  Guyant with an unperfected lien created by the security agreement. The only difference between his first and fourth priority liens is that the first priority claim is the perfected UCC lien which is itself the fourth priority lien.

Prior to the 2001 amendments to the Virginia Uniform Commercial Code, the liens in effect on the date of the filing of a bankruptcy petition continued throughout the pendency of the bankruptcy case.  Va.Code (1950) §8.9-403(2) previously provided, in part, that

> If a security interest perfected by filing exists at the time solvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty days or until the expiration of the five-year period whichever occurs later.

This provision was deleted in 2001 when Virginia Code §8.9-403 (repealed by Acts 2000, c. 1007, effective July 1, 2001) was re-codified as Va.Code (1950) §8.9A-515.  This was a deliberate change. It was thought, prior to the 2001 amendment, that the filing of a continuation statement after a bankruptcy case was commenced violated the automatic stay.  11 U.S.C. §362(a).  In 1994, Congress amended §362 by making explicit that the automatic stay did not apply to acts to continue the perfection of an interest in property.  11 U.S.C. §362(b)(3).  This change in the Bankruptcy Code eliminated the fear that filing a continuation statement would violate the automatic stay.  After the amendment, there was no further impediment to filing a continuation statement or taking any other act to continue the perfection of a lien.

Section §8.9-403(2) had its own unfortunate consequences.  The Uniform Commercial Code permitted the state office where financing statements were filed to destroy them five years after they were filed, the time when they would ordinarily lapse if not continued.  Under the pre-2001 law, the

3

old financing statements were destroyed.  However, the financing statement continued to be effective under the Virginia Code while a debtor was in bankruptcy.  A subsequent search of the financing statements would not reveal the financing statement because the original financing statement would was destroyed and no continuation statement was filed.[3]  The amendments to the Bankruptcy Code and to the Uniform Commercial Code resolved the issues.  A financing statement lapses five years after it is filed even if a bankruptcy is commenced.  It is now incumbent upon the creditor to file a continuation statement notwithstanding the pendency of a bankruptcy case, just as he would be required to do if no bankruptcy case was filed.

Guyant did not file a continuation statement and consequently, the October 11, 2006 financing statement lapsed after the filing of the bankruptcy.  The question is the effect of the lapsed financing statement.  The debtor argues that the debt is now unsecured.

The debtor relies on the 2001 amendment to Virginia Code §8.9-515(c).  It argues that the

---

[3]Comments 2 and 3 to the prior provision explained the rationale and the effect.  It stated:

  2.  Prior statutes have usually limited the effectiveness of a filing to a specified period of time after which refiling is necessary. Subsection (2) follows the same policy, establishing five years as the filing period .   .   . Subsection (3) provides for the filing of one or more continuation statements (which need be signed only by the secured party) if it is desired to continue the effectiveness of the original filing.

  The theory of this Article is that the public files of financing statements are self-clearing, because the filing officer may automatically discard each financing statement after a period of five years plus the year after lapse required by subsection (3), unless a continuation statement is filed, or the financing statement is still effective under subsection (6). This theory materially lessens the tension that would otherwise exist to have the files cleared by termination statements under Section 9-404. Similarly, a person searching the files need not go back past this five years plus one year; and if the indices are arranged by years, he has a limited and defined search problem. The section asks the filing officer to attach financing statements whose life has been continued by continuation statements to the latter statements, so that anything contained in the files of old years can be discarded.

  3.  Under subsection (2) the security interest becomes unperfected when filing lapses. Thereafter, the interest of the secured party is subject to defeat by purchasers and lienors even though before lapse the conflicting interest may have been junior. .   .   .

statutory change is plain on its face and should be given its obvious meaning.  Outside bankruptcy, there would be no doubt that Guyant would lose his perfected status.  The lien of the writ of *fieri facias* does not assist Guyant.  A writ of *fieri facias* expires one year after it is delivered to the sheriff.  Va. Code §8.01-501 and 505.  Consequently, the writ of *fieri facias* expired on October 5, 2011.[4]  The next creditor in line is the debtor as a hypothetical lien creditor under §544(a)(1) who now has a first lien on the membership interests.  There is case law to support this.  *In re Miller Brothers Lumber Co., Inc.*, 212 Bankr. Lexis 2031 (Bankr.M.D.N.C. May 8, 2012); 2012 WL 1601316 (Bankr.M.D.N.C. May 8, 2012); 56 BCD 128 (Bankr.M.D.N.C. 2012); 77 UCC Rep.Serv.2d 525 (Bankr.M.D.N.C. 2012).

Guyant recognizes these issues, but argues that the lien status of a creditor is determined as of the date of filing; that his status is "frozen" at that point in time; and that a subsequent lapse is of no effect.  There is case authority for this proposition.  *In re Wilkinson*, 212 Bankr. Lexis 1539 (Bankr.N.D.N.Y. April 10, 2012); 2012 WL 1192780 (Bankr.N.D.N.Y. April 10, 2012); 77 UCC Rep.Serv.2d 363 (Bankr.N.D.N.Y. 2012).

The court recognizes the split of opinion with respect to the effect of the changes to the Bankruptcy Code and the Uniform Commercial Code.  In considering both lines of cases, this court finds *In re Miller Brothers Lumber Co., Inc.* more persuasive.  The plain meaning of the statutes should be given effect in the absence of countervailing considerations.  Here, the Bankruptcy Code was amended to make clear that filing a continuation statement did not violate the automatic stay.  The Uniform Commercial Code was then revised – and enacted in Virginia – to eliminate the tolling

---

[4]If it was issued later, but before the filing of the petition in bankruptcy, it would have expired no later than February 28, 2012.

period for the lapse of financing statements. The amendments addressed two specific concerns: the extent of the automatic stay and the problem of destroyed financing statements which remained effective because a bankruptcy petition was filed even though no continuation statement was filed. Prior to these changes, the secured creditor faced difficulties in maintaining his secured status. The creditor had to obtain relief from the automatic stay. This took time and incurred expense. There was no requirement that relief be granted. The effect was to prevent or limit the ability of a secured creditor to maintain his secured status. The freeze doctrine easily overcame these problems and provided a tolling provision of its own. Of course, if the financing statement lapsed during the bankruptcy, the lien continued in effect, but only until the conclusion of the case when it would be lost. The UCC codified the freeze doctrine and added a period after the conclusion of the bankruptcy case to file a continuation statement. The 2001 amendments made all of this unnecessary. This put the secured creditor in the same position in bankruptcy as he had been before bankruptcy. The application of the freeze doctrine – in essence an equitable remedy to the situation – was superceded by a legal resolution.

The intents of both Congress and the General Assembly are clear. The statutes provide a plain remedy to an unfortunate situation, making the prior equitable remedy unnecessary. There is no other provision in the Bankruptcy Code that preserves a financing statement in these circumstances. The statutes should be given effect as written.

To the extent that the cases Guyant cites predate the 2001 statutory change or rely on the prior statute, they are of limited utility because the UCC and Virginia law provided for this result.[5]

---

[5]The Bankruptcy Code was enacted in 1978 and became effective October 1, 1979, replacing the Bankruptcy Act of 1898. The Bankruptcy Code was intended to be a comprehensive revision of the Bankruptcy Act.

There is discussion of the principle that liens survive bankruptcy.  This principle is undoubtedly correct.  But, it is the wrong question.  While liens survive, they do not necessarily emerge from bankruptcy as they entered bankruptcy.  They accrue no greater right, strength or duration for having been through a bankruptcy proceeding.  The question is not whether a lien survives bankruptcy, but whether a lien that terminates by its own terms during the pendency of a bankruptcy is given any greater right because of the filing of the bankruptcy than it would have had at state law if no bankruptcy had been filed.  The Virginia General Assembly examined the issue and felt there should be no difference between the situations.  In both instances, the creditor is required to file a continuation statement, which is a minor undertaking.  In the process, the integrity of the state records is maintained.

Guyant relies not on the statute but on a comment to the statute:

Effect of Debtor's Bankruptcy. Under former Section 9-403(2), lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding. Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled. Subsection (c) deletes the former tolling provision and thereby imposes a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy. The secured party can prevent lapse by filing a continuation statement, even without first obtaining relief from the automatic stay. See Bankruptcy Code Section 362(b)(3). Of course, if the debtor enters bankruptcy before lapse, the provisions of this Article with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the bankruptcy petition).

Va.Code (1950) §8.9A-515, Comment 4; *see also* UCC §9-515, Comment 4.  In particular, Guyant relies on the last sentence which refers to "rights as of the date of the filing of the bankruptcy petition."  He asserts that this refers to the bankruptcy doctrine of freezing the status as of the date of the filing.  It is difficult to interpret the comment as Guyant interprets it.  It does not seem

7

reasonable that the General Assembly would expressly repeal a provision in the text of the statute and then reinstate it through an oblique comment.  It would simply have left the statute as it was.  The comment is a recognition that the Bankruptcy Code may treat matters differently.  There is, however, nothing in the Bankruptcy Code itself that establishes the practice suggested.  The practice was an equitable response that now has a legislative remedy.

Guyant presents a further argument.  He asserts that even if the financing statement lapsed, he still retained an unperfected security interest.  The argument has appeal where there is no intervening creditor.  Perfection is only necessary when there is a competing creditor.  In this case, there is an intervening creditor.  As between the debtor and the creditor, the creditor retains a lien albeit unperfected.  The difficulty with Guyant's argument is that the Bankruptcy Code gives a debtor-in-possession the rights of a judicial lien creditor as of the date of the filing of the petition in bankruptcy. 11 U.S.C. §544(a)(1).  As of the date of the filing of the petition, debtor-in-possession held a third position as a result of §544(a)(1).  With the lapse of the financing statement, however, Guyant had an unperfected security interest subject to the debtor-in-possession's lien right under §544(a)(1).  With the termination of the lien created by the  writ of *fieri facias,* the second position lien was terminated leaving the trustee in first position.[6]  As between a lien creditor and an unperfected security interest, the lien creditor has priority.  Va.Code (1950) §8.9A-317(a); *See also In re Johnson,* 179 B.R. 800 (Bankr.E.D.Va. 1995).

This is not an action to avoid a lien.  It is simply an action to determine the priority of the

---

[6]The court is aware that there is case authority to the contrary.  It, too, relies on the "freeze" approach although there is no such provision in the Bankruptcy Code and an equitable remedy to maintain the lien is unnecessary.  *See In re Andrews,* 210 B.R. 719 (Bankr.E.D.Va.1997) (payments due under noncompete agreement); *Homeowner's Finance Corp. v. Pennington (In re Pennington),* 47 B.R. 322, 326 (Bankr.E.D.Va. 1985).

existing liens.  The avoidance language which is contained in the ellipsis of §544(a) quoted above

relates to the avoidance issues.  It does not, however, relate to the existence or non-existence of the

hypothetical judicial lien rights of the trustee or debtor-in-possession.[7]


<u>Conclusion</u>

The court recognizes the split of opinion with respect to the effect of the lapse of a financing

statement following a filing of a petition in bankruptcy.  The reasoning of *Miller Brothers* more

effectively captures the plain meaning of the state statute and gives full effect to the creation and

termination of liens under state law.  The financing statement lapsed.  Guyant has a lien by virtue

of a security agreement, but it is unperfected and subordinate to the debtor-in-possession under

§544(a)(1).  The lien arising from the writ of *fieri facias* expired of its own course.  The debtor-in-

possession's rights as a hypothetical lien creditor under §544(a)(1) became the first priority lien.

Alexandria, Virginia
March 29, 2013


/s/  Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

James P. Campbell
John P. Van Beek

18412

---

[7]Guyant also asserts that this is a proceeding to determine the validity, priority or extend of a lien in property and should have been brought as an adversary proceeding.  Fed.R.Bankr.P. 7001(2).  Be that as it may, the point was not pursued.  This is essentially an issue of law and neither party was helped or hindered by the form of the proceeding.