# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| In re:<br><br>HIGHLAND CONSTRUCTION<br>MANAGEMENT SERVICES, LP,<br><br>　　　Debtor. | Case No.   11-11413-RGM<br>(Chapter 11) |
| HIGHLAND CONSTRUCTION<br>MANAGEMENT SERVICES, LP,<br><br>　　　Plaintiff,<br><br>vs.<br><br>WELLS FARGO, N.A. f/b/o JEROME<br>GUYANT IRA,<br><br>　　　Respondent. | Contested Matter<br>(Objection to Proof of Claim 4) |

## MEMORANDUM OPINION

When is a financing statement that is no longer effective, still effective? When it lapses, of course!  The sole issue presented in this case is the effect of a post-petition lapse of a secured creditor's financing statement.  Highland argues that the lapse renders the claim unsecured.  Guyant argues that the lapse has no effect and his claim continues to be secured.

This case is before the court on the motion of Wells Fargo, N.A. f/b/o Jerome Guyant IRA ("Guyant") for reconsideration of the court's order sustaining the objection of Highland Construction Management Services, L.P., the chapter 11 debtor in possession, to the secured status of Guyant's proof of claim.  Upon further consideration, the court will vacate its prior order and allow Guyant's proof of claim as a secured claim.

1

## Factual Background

The facts are not disputed.  Guyant loaned the debtor more than a million dollars starting on December 22, 2005.  The loan was secured by the debtor's interest in two Virginia limited liability companies.  The initial financing statement was filed on October 11, 2006.  The debtor filed a petition in bankruptcy under chapter 11 of the Bankruptcy Code on February 28, 2011.  Guyant did not file a continuation statement and on October 10, 2011, the financing statement lapsed.  Va.Code (1950) §8.9A-515(a) and (c).  There are no other liens on the collateral.

The applicable statute is Va.Code (1950) §8.9A-515.  It states, in relevant part:

> (a) *Five-year effectiveness.* .  .  . [A] filed financing statement is effective for a period of five years after the date of filing.

> .  .  .

> (c) *Lapse and continuation of financing statement.*  The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed pursuant to subsection (d). Upon lapse, a financing statement ceases to be effective and any security interest .  .  . that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise.  If the security interest .  .  . becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.

## Positions of the Parties

The debtor argues that when the financing statement lapsed and "cease[d] to be effective," Guyant's lien terminated and his claim became an unsecured claim.  Va.Code (1950) §8.9A-515(c). The debtor recognizes that a security agreement is effective as between the debtor and a creditor even if not perfected.  Va.Code (1950) §8.9A-203.  However, it is subordinate to "a person that becomes a lien creditor before .  .  . the security interest .  .  . is perfected."  Va.Code (1950)

§8.9A-317(a)(2)(A).  A trustee in bankruptcy[1] takes priority over a creditor with an unperfected

security interest when the bankruptcy petition is filed.  *Virginia Nat'l Bank v. Yale Mining Corp. (In

re Yale Mining Corp.),* 39 B.R. 201 (Bankr.W.D.Va. 1984).  The debtor concludes that when a

financing statement lapses after a bankruptcy petition is filed, the security interest in the collateral

becomes unperfected and the trustee (or in a chapter 11 proceeding, the debtor in possession)

succeeds to first priority because of its rights as a hypothetical lien creditor as of the date of the filing

of the petition.[2]

Guyant construes Va.Code (1950) §8.9A-515(c) differently.  Relying on Comment 3,

particularly Example 2, in the Official Comment to §8.9A-515, he argues that his lapsed financing

statement does not affect his first priority lien on the collateral.  Comment 3 states:

> 3. **Lapse.** When the period of effectiveness under subsection (a) or (b) expires, the
> effectiveness of the financing statement lapses.  The last sentence of subsection (c)
> addresses the effect of lapse.  The deemed retroactive unperfection applies only with
> respect to purchasers for value; unlike former Section 9-403(2), it does not apply
> with respect to lien creditors.

> **Example 1:** SP-1 [Secured Party-1] and SP-2[Secured Party-2] both hold security
> interests in the same collateral. Both security interests are perfected by filing. SP-1
> filed first and has priority under Section 9-322(a)(1). The effectiveness of SP-1's
> filing lapses. As long as SP-2's security interest remains perfected thereafter, SP-2
> is entitled to priority over SP-1's security interest, which is deemed never to have
> been perfected as against a purchaser for value (SP-2). See Section 9-322(a)(2).

> **Example 2:** SP [Secured Party] holds a security interest perfected by filing. On July
> 1, LC [Lien Creditor] acquires a judicial lien on the collateral. Two weeks later, the
> effectiveness of the financing statement lapses. Although the security interest
> becomes unperfected upon lapse, it was perfected when LC acquired its lien.
> Accordingly, notwithstanding the lapse, the perfected security interest has priority
> over the rights of LC, who is not a purchaser. See Section 9-317(a)(2).

---

[1]A chapter 11 debtor in possession has the rights of a trustee in bankruptcy.  11 U.S.C. §1107(a).

[2]Va.Code (1950) §8.9A-102(52)(c) defines "lien creditor" to include "a trustee in bankruptcy from the date of
the filing of the petition."

The debtor replies by citing Comment 4, "Effect of Debtor's Bankruptcy," in the same Official Comment. It states:

> 4. **Effect of Debtor's Bankruptcy.** Under former Section 9-403(2), lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding. Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled. Subsection (c) deletes the former tolling provision and thereby imposes a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy. The secured party can prevent lapse by filing a continuation statement, even without first obtaining relief from the automatic stay. See Bankruptcy Code Section 362(b)(3). Of course, if the debtor enters bankruptcy before lapse, the provisions of this Article with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the bankruptcy petition).

The predecessor provision referred to in Comment 4, Va.Code (1950) §8.9-403 stated:

> **What constitutes filing; duration of filing; effect of lapsed filing; duties of filing officer** . . .
>
> (2) [A] filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse. If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty days or until expiration of the five-year period, whichever occurs later. Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.

## Discussion

The starting point for statutory construction is the statute itself. *Hubbard v. Henrico Ltd. Partnership,* 255 Va. 335, 339, 497 S.E.2d 335, 337 (1998) (When a statute is clear and unambiguous "a court may look only to the words of the statue to determine its meaning" unless a "literal construction would result in a manifest absurdity."). The Official Comments are not part

4

of the statute that the General Assembly enacted into law.  The court should not consider them unless the statute is ambiguous.  Va.Code (1950) §8.9A-515(c) is ambiguous.  Reasonable people can come to different understandings of the statute.  *See, e.g. In re Miller Brothers Lumber Co., Inc.*, 212 Bankr. Lexis 203, 2012 WL 1601316, 56 BCD 128, 77 UCC Rep.Serv.2d 525 (Bankr.M.D.N.C. May 8, 2012) (trustee in bankruptcy had priority over secured party with pre-petition perfected security interest where the financing statement lapsed post-petition); *Mostoller v. CitiCapital Commercial Corp. (In re Stetson & Assoc., Inc.*), 330 B.R. 613, 619-620 (Bankr.E.D.Tenn. 2005) (secured party with pre-petition perfected security interest had priority over trustee in bankruptcy even though secured lender's financing statement lapsed post-petition); *In re Wilkinson*, 212 Bankr. Lexis 1539; 2012 WL 1192780, 77 UCC Rep.Serv.2d 363 (Bankr.N.D.N.Y. April 10, 2012) (secured party with pre-petition first priority perfected security interest prevailed over secured party with pre-petition second priority perfected security interest even though senior secured creditor's financing statement lapsed post-petition); and *In re Chattanooga Choo-Choo Co.,* 98 B.R. 792, 8 UCC Rep.Serv.2d 795 (Bankr.E.D.Tenn. 1989) (second priority perfected secured creditor prevailed over first priority perfected secured creditor whose financing statement lapsed pre-petition).

The Official Comments are useful tools in construing the Uniform Commercial Code.  *Leake v. Meredith,* 221 Va. 14, 17, 267 S.E.2d 95 (1980);  *See also Halifax Corp. v. First Union Nat. Bank,* 262 Va. 91, 101-102, 546 S.E.2d 696, 703 (2001) (discussing rules of statutory interpretation and role of Official Comments); *See also Mostoller,*  330 B.R. at 619-620.

Professor G. Ray Warner's 2001 article, *The Anti-Bankruptcy Act: Revised Article 9 and Bankruptcy,* 9 Am.Bankr.Inst.L.Rev. 3, 16-19 (April 2001), is also helpful.  He makes clear that secured parties had considerable input in writing Revised Article 9 and that they incorporated the maximum protections for themselves possible, particularly with respect to bankruptcy.  Viewing

Revised Article 9 through the eyes of secured parties assists in better understanding it.  In doing so,

two matters not mentioned in Article 9, but discussed in the Official Comments, should be addressed

because they form the foundation for understanding the effect of the lapse of a financing statement

in bankruptcy.  They are the retrospective and prospective effectiveness of filed financing statements

and the significance of the filing date of a petition in bankruptcy on lien priorities during the

pendency of the bankruptcy case. The first – the creation, duration and effect of security interests

– arises under state law.  The second – the effect of the filing of a petition in bankruptcy – arises

under federal law.[3]

## Retrospective and Prospective Effect of Financing Statements

The basic UCC concept is that once a security interest is perfected by filing a financing

statement, it remains perfected notwithstanding the lapse of the financing statement that perfected

the security interest in the first instance as to parties who held liens as of the date the financing

---

[3]*See Butner v. United States,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-918 (1979) where the Supreme Court stated:

> The constitutional authority of Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States" would clearly encompass a federal statute defining the mortgagee's interest in the rents and profits earned by property in a bankrupt estate.  But Congress has not chosen to exercise its power to fashion any such rule.  The Bankruptcy Act does include provisions invalidating certain security interests as fraudulent, or as improper preferences over general creditors. Apart from these provisions, however, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.

> Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.  Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323.  The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

*Butner,* 440 U.S. at 54-55, 99 S.Ct. at 917-918 (footnotes omitted).

statement lapsed.[4]  This is the retrospective rule.  The prospective rule is that once a financing

statement lapses, the security interest becomes unperfected as to all parties who obtain a lien

subsequent to the lapse.  They are treated in the same manner as if the original financing statement

had never been filed.

Does the statute support this concept?  The prospective rule is plainly set out in the second

sentence of Va.Code (1950) §8.9A-515(c): "Upon lapse, a financing statement ceases to be effective

and any security interest .  .  . that was perfected by the financing statement becomes unperfected."

This is the commonsense answer.  The purpose of filing a financing statement is to give notice to

the world that the collateral is subject to a lien.  Once it expires, it may, literally, not give any notice

to anyone because the filing office is only required to maintain a record of the information for one

year after the lapse.  Va.Code (1950) §8.9A-522(a).

The support for the retrospective rule is more opaque.  The Official Comments to Va.Code

(1950) §8.9A-316 and §8.9A-515 contain references to the retrospective effect of a lapsed financing

statement.  Va.Code (1950) §8.9A-316 addresses a similar problem to the lapsing of financing

statements by the passage of time addressed in Va.Code (1950) §8.9A-515(c).  The former addresses

changes in governing law arising from a debtor's relocation from one state to another.  It is necessary

for the creditor to file a financing statement in the new state.  Subsection (b) addresses the effect of

the original financing statement when a financing statement is not filed in the new jurisdiction.[5]  The

---

[4]The last sentence of Va.Code §8.9A-515(c) provides an except for secured parties, but not lien creditors.

[5]Va.Code (1950) §8.9A-316(b) provides that:

**Security interest perfected or unperfected under law of new jurisdiction.**  If a security interest
described in subsection (a) becomes perfected under the law of the other jurisdiction before the earliest
time or event described in that subsection, it remains perfected thereafter.  If the security interest does
not become perfected under the law of the other jurisdiction before the earliest time or event, it

(continued...)

effect is the same as under Va.Code (1950) §8.9A-515(c).  Official Comment 3 to Va.Code (1950)

§8.9A-316 states:

> 3**.  Retroactive Unperfection.** Subsection (b) sets forth the consequences of the
> failure to reperfect before perfection ceases under subsection (a):  the security interest
> becomes unperfected prospectively and, as against purchasers for value, including
> buyers and secured parties, but not as against donees or lien creditors, retroactively.
> .   .   . See also Section 9-515 (taking the same approach with respect to lapse).
> Although this approach creates the potential for circular priorities, the alternative –
> retroactive unperfection against lien creditors – would create substantial and
> unjustifiable preference risks.

Similarly, Official Comment 3 to Va.Code (1950) §8.9A-515 refers to retroactive unperfection.

What can easily slip by or be conflated in this Official Comment is the differing references to the

financing statement, which is what lapses, and unperfection which, although not expressly stated,

refers to the security interest.   The financing statement lapses; the security interest becomes

unperfected.

The unperfection is referred to as "[t]he ***deemed*** retroactive unperfection." Official Comment

3 to Va Code (1950) §8.9-515.  "Deemed" is a legal word of art.  The first definition of "deem" in

Black's Law Dictionary (9th ed. 2009) is "To treat (something) as if (1) it were really something else,

or (2) it has qualities that it does not have."  Black's Law Dictionary then quotes G.C. Thornton,

*Legislative Drafting* 99 (4th ed. 1996):

> 'Deem' has been traditionally considered to be a useful word when it is necessary to
> establish a legal fiction either positively by 'deeming' something to be what it is not
> or negatively by 'deeming' something not to be what it is. .  . . All other uses of the
> word should be avoided. .   .   . 'Deeming' creates an artificiality and artificiality
> should not be resorted to if it can be avoided.

---

[5](...continued)
becomes unperfected and is deemed never to have been perfected as against a purchaser of the
collateral for value.

The use of the word "deemed" in Official Comment 3 means that there is no actual retroactive unperfection. It is a fictional substitute for actual retroactive unperfection for purchasers for value. For lien creditors the real rule applies, that is, there is no retroactive unperfection. The reality is that the security interest of the secured party whose financing statement lapsed remains perfected.

Is there support in the statute for the construction provided in the Official Comments? While the Official Comments are helpful, the Virginia Supreme Court cautions that "they should not become devices for expanding the scope of Code sections where language within the sections themselves defies such an expansive interpretation." *Leake v. Meredith,* 221 Va. at 17, 267 S.E.2d at 95; *See Paugh v. Henrico Area Mental Health & Dev. Serv.,* 286 Va. 85, 743 S.E.2d 277 (2013). The last sentence of Va.Code (1950) §8.9A-515(c) provides the nexus. It states that "[i]f the security interest . . . becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser . . . for value." This sentence must have some meaning. It is a "settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *Hubbard v. Henrico Ltd. P'ship,* 255 Va. 335, 340, 497 S.E.2d 335, 337 (1998). *See Brown v. Commonwealth,* 284 Va. 538, 733 S.E.2d 638 (2012). There would be no purpose for including this sentence in §8.9A-515(c) if unperfection were to put a previously perfected security interest in the same position as if the financing statement had never been perfected. That is what this sentence is intended to accomplish. If it would not have been accomplished in the absence of this sentence, then unperfection – the lapse of a financing statement – cannot be the same as if the previously perfected security agreement had never been perfected. It follows that, although the financing statement has lapsed, the security interest remains perfected. This is supported by the statute's use of the word "deemed." As to an existing junior secured party when the senior secured party's financing statement lapses, the senior secured party's

9

security interest is "deemed never to have been perfected" even though, in reality, it has been. It is simply treated as if it had not been perfected as to the junior secured creditor. As to all others, the reality prevails – it was and continues to be perfected on a retrospective basis.

The final consideration is the adoption of the Revised Article 9. The prior version of Va.Code (1950) §8.9A-515(c), Va.Code (1950) §8.9-403, contained the same last sentence, but also included lien creditors as well as purchasers for value. Lien creditors and secured parties are treated separately in various provisions of both Revised Article 9 and its predecessor. The deletion of lien creditors from the last sentence must have meaning and that was to remove them from the deemed never perfected status of secured parties. It, again, supports the retrospective/prospective interpretation.

The application can be shown by a hypothetical in which there are three secured creditors. If all three security interests are perfected when the most senior creditor's financing statement lapses, then without the application of the last sentence of Va.Code (1950) §8.9A-515(c), the resulting post-lapse priorities would be Secured Party 1 (with the lapsed financing statement), Secured Party 2 and then Secured Party 3. If Secured Party 1's financing statement lapses after Secured Party 2 files its financing statement but before Secured Party 3 files its financing statement, the resulting post-lapse priorities are Secured Party 3, Secured Party 1 (with the lapsed financing statement) and Secured Party 2. Secured Party 1 (with the lapsed financing statement) retains priority over Secured Party 2, but Secured Party 3 has priority over the unperfected security interest of Secured Party 1.[6] That, however, is not the result because the last sentence of Va.Code (1950) §8.9A-515(c) alters the result. It provides that if a security interest becomes unperfected upon lapse, "it is deemed never to have

---

[6]This would appear to create a circular set of priorities when the priorities of Secured Party 2 and Secured Party 3 are considered with respect to each other.

10

been perfected as against" a subsequent secured party.  Va.Code (1950) §8.9A-515(c).  The new

priorities are Secured Party 2, Secured Party 3 and then Secured Party 1 (with the lapsed financing

statement).  Secured Party 2 has priority over Secured Party 1 (with the lapsed financing statement)

by virtue of the last sentence of Va.Code (1950) §8.9A-515(c) because the lapsed financing

statement is "deemed" never to have been perfected as to it.  This is an exception to the retrospective

rule that a financing statement once perfected remains perfected as to existing junior perfected

security interests.  Secured Party 3 has priority over Secured Party 1 (with the lapsed financing

statement) without regard to when it perfects its security interest.  If it perfects its security interest

before the lapse, the lapsed financing statement is unperfected as to Secured Party 3.  If it perfects

its security interest after the lapse (but before Secured Party 1 files a new financing statement),

Secured Party 3 has priority over Secured Party 1.  Va.Code (1950) §8.9A-322(a)(1).  Secured Party

2 always retains its priority over Secured Party 3 because its financing statement was filed before

Secured Party 3's financing statement.  Va.Code (1950) §8.9A-322(a)(1).

Lien creditors must also be considered.  The priority of parties secured by a perfected security

interest is governed by Va.Code (1950) §8.9A-322 and is generally a first in time standard.  The

rights of secured parties and lien creditors are governed by Va.Code (1950) §8.9A-317(a).

Generally, as between a lien creditor and a secured party, the first in time prevails. Lien creditors

do not benefit from the last sentence in Va.Code (1950) §8.9A-515(c).  The last sentence speaks only

to purchasers for value.  It says nothing about lien creditors.  Lien creditors are not purchasers for

value.  The definition of a "purchaser" is "a person who takes by purchase."  Va.Code (1950) §8.1A-

201(30).  The definition of "purchase" is:

> *"Purchase"* means taking by sale, lease, discount, negotiation, mortgage, pledge,
> lien, security interest, issue or reissue, gift, or any other **voluntary** transaction
> creating an interest in property.

Va.Code (1950) §8.1A-201(29) (emphasis added).  A lien creditor is not a purchaser because he has

not purchased anything.  The creation of a judicial lien is not a ***voluntary*** transaction.  The resulting

priorities between a secured party and a subsequent lien creditor will be Secured Party and then Lien

Creditor, both before and after lapse of Secured Party's financing statement.  The last sentence of

Va.Code (1950) §8.9A-515(c) does nothing for the lien creditor.  Only a purchaser of the collateral

for value is included in the exception. It is different if the financing statement lapses before the lien

creditor's lien attaches to the collateral, the lien creditor will have priority over the secured party

because the financing statement was unperfected when the judicial lien attached and the lien creditor

was first in time. Va.Code (1950) §8.9A-317(a).

In short, under the Uniform Commercial Code, a secured party whose financing statement

lapses loses his position to all parties with perfected security interests when the financing statement

lapses.  However, he retains his priority as to all lien creditors who obtained a judicial lien prior to

the lapse of the financing statement.[7]

### Bankruptcy Freeze Rule

Up to this point, bankruptcy has not been a consideration in analyzing the effect of a lapsed

financing statement.  It is solely a matter of state law.  Bankruptcy affects the application of state

law.  While the lien priorities among creditors are determined by state law, for example, Article 9

of the UCC, the Bankruptcy Code may alter those priorities through the application of preference,

---

[7]Although not relevant in this case, after the lapse and until the creditor with the lapsed financing statement files a new financing statement, all purchasers for value and lien creditors have priority over the creditor with the lapsed financing statement.

fraudulent conveyance and other Bankruptcy Code provisions and doctrines.[8]  *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917 (1979);  *See, e.g.,* 11 U.S.C. §544 *et seq.*

The first question is the point in time when the priorities are determined by state law and the second is whether they change during the course of the bankruptcy case.  One resolution is the "freeze" rule, that is, lien priorities are determined as of the filing of the petition in bankruptcy and are not altered during the pendency of the case (unless avoided under the Bankruptcy Code, principally, the chapter 5 avoidance powers).  *In re Chaseley's Foods, Inc.,* 726 F.2d 303 (7th Cir. 1983).  This line of cases dates back to at least *Lockhart v. Garden City Bank & Trust Co.,* 116 F.2d 658 (2nd Cir. 1940).  In *Lockhart,* New York law required chattel mortgages to be refiled annually.  The one-year period expired after the debtor filed a petition in bankruptcy and the bank failed to refile the chattel mortgage.  The trustee unsuccessfully sought to have the bank's lien declared invalid.  The Court of Appeals held that:

> [A] bankruptcy trustee, as to all property in possession of the bankrupt at the time of adjudication, is vested 'as of the date of bankruptcy with all rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings.'  Sec. 70, sub. c, 11 U.S.C.A. §110, sub. c.  Thus the critical time at which the trustee's rights are to be determined is the date of bankruptcy.  Hence in general no creditors' liens acquire validity after the filing of the petition; this is emphasized by the exceptional cases otherwise – liens for property transferred in good faith for a present consideration actually paid to the amount thereof, Sec. 70, sub. d(1), and statutory liens for employees, contractors, mechanics, landlords and others, and for taxes, though not perfected until after bankruptcy .   .   .  ***It should equally follow, we believe, that liens good at this time do not lose their validity as against the trustee, unless the statute so expressly provides.***

---

[8]Distributional priorities are of a different type.  *See, e.g.,* 11 U.S.C. §507 and 510.

*Lockhart,* 116 F.2d at 661 (emphasis added and citations omitted).[9]  In *Flebotte v. Northern (In re Fletcher Woods, Inc.),* 887 F.2d 1079, 1989 WL 117728 (4th Cir. October 2, 1989) (unpublished opinion), the Court of Appeals for the Fourth Circuit also held that the rights of a secured creditor were fixed as of the date of the commencement of the bankruptcy case and that the post-petition unauthorized release did not terminate the creditor's secured position.

The alternative to the freeze rule evaluates the secured status throughout the pendency of the case.  If a financing statement, judgment lien or the lien of a deed of trust expires during the pendency of a bankruptcy case, the secured creditor loses the benefit of its lien and becomes an unsecured creditor at that time.

The Bankruptcy Code is not explicit on when the secured nature of a claim is evaluated although the general scheme appears to favor evaluation at the commencement of the case.  Proofs of claims are determined "as of the date of the filing of the petition."  11 U.S.C. §502(b).  This suggests that a claim, both the amount and the secured status, are determined as of the filing of the petition.  However, §502(b) only states that the court "shall determine the ***amount*** of such claim." 11 U.S.C. §502(b) (emphasis added).  Secured or unsecured status is different from the amount of a claim.  There is no explicit reference to the secured status in §502(b).  Section 506(a), however, directly addresses the secured status of a claim.  A claim is a secured claim only to the extent of the value of the collateral.

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

---

[9]*See In re Willax,* 93 F.2d 293 (2nd Cir. 1937) and *Mast Corp. v. Buckley (In re Long Island Properties, Inc.),* 143 F.2d 349 (2nd Cir. 1944) which address mechanics liens as exceptions to the rule.  *See also Morton v. Nat'l Bank of New York City (In re Morton),* 866 F.2d 561 (2nd Cir. 1989).

11 U.S.C. §506(a)(1). While there is broad language suggesting that the time for the determination can be any time during the bankruptcy case, §506(a)(1) – as does §502(b) – refers to the value of the collateral, not to the validity of the lien itself. Another indication favoring the determination of the secured status of a lien is §544 which gives the trustee certain avoidance powers "as of the commencement of the case." 11 U.S.C. §544(a).

The Supreme Court addressed liens in bankruptcy in several cases. In *Isaacs v. Hobbs Tie & Timber Co.* it stated that:

> [W]hile valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation.

282 U.S. 734, 738, 51 S.Ct. 270, 272 (1931); *See also Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 778 (1992) ("Under the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected."); *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor in personam – while leaving intact another – namely, an action against the debtor in rem"); *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."). The rule that the filing of a petition in bankruptcy does not of itself alter or modify a pre-petition lien and, unless modified during the bankruptcy, passes through bankruptcy unaffected by the filing is well established.

The Bankruptcy Code expressly provides for modification or termination of liens during bankruptcy. For example, §522(f) permits the avoidance of certain liens impairing the debtor's exemptions. Section 506(d) voids a lien to the extent that the lender is undersecured. Sections 544, 545, 547 and 548 permit certain liens to be avoided. However, neither the Bankruptcy Code nor the freeze rule directly addresses the question presented here, the effect of the termination during the

15

bankruptcy proceeding itself of a lien by its own terms or by the terms of the statute creating it.  It is not necessary in this case to resolve the role of the freeze rule.

### **Bankruptcy Decisions**

Recognition of the UCC Article 9 retrospective/prospective analysis and of the Bankruptcy Code freeze rule assists in harmonizing the four bankruptcy cases that are ostensibly at odds with each other.  *Wilkinson* is the most straightforward analysis.  This was a contest between two secured creditors.  The debtor in possession was not involved.  Melinda Wilkinson – the debtor's mother – held a pre-petition first priority perfected security interest in 69 cows.  The Farm Service Agency ("FSA") held a pre-petition second priority perfected security interest.  Ms. Wilkinson's financing statement lapsed seven months after the debtor filed bankruptcy and three months before the cows were sold at auction.  Both Ms. Wilkinson and FSA asserted a first priority security interest in the proceeds from the sale of the cows.  The Bankruptcy Court applied the freeze rule, that is, the priorities in existence on the date the petition was filed controlled.  It held that although Ms. Wilkinson's financing statement lapsed post-petition, she remained in first position.  *In re Wilkinson,* 2012 WL 1192780 at *5.  Outside bankruptcy, FSA would have prevailed.  Revised Article 9 §9A-515(c).  Ms. Wilkinson's security interest would have been "deemed never to have been perfected as against a purchaser of the collateral for value."  UCC §9A-515(c).  FSA would have been a purchaser for value and become the holder of the first priority lien.  This is an example of the application of the freeze rule.

*Mostoller* was a contest between the chapter 7 trustee and a secured party.  The Bankruptcy Court held that the secured party's pre-petition priorities of its financing statements filed before the bankruptcy petition retained their priority over the chapter 7 trustee notwithstanding that three of the

financing statements lapsed post-petition. *Mostoller,* 330 B.R. at 619-620. The case likely started as a chapter 11 proceeding that converted to chapter 7. During the pendency of the case, three financing statements lapsed. The court held that:

> The [trustee's] rights and powers as Chapter 7 Trustees were established as of the date of filing, but defined under state law. *See* 11 U.S.C.A. §544(a). Because trustees in bankruptcy are armed with the rights of lien creditors under §544(a) and are not purchasers for value, the fact that three of the. . . Financing Statements lapsed during the pendency of the bankruptcy case does not change the priority scheme as between the [secured party and the chapter 7 trustee].

*Mostoller,* 330 B.R. at 623-24 (footnotes omitted). In further explaining its holding, the court stated:

> The lapse is of no consequence to the [secured party] with respect to its priority as against the [trustee] because, "[u]nder the 'strong arm' provisions of 11 U.S.C. §544(a)(1), the Trustee stands in the shoes of a lien creditor whose liens arose as of the petition date." *In re Hurst,* 308 B.R. 298, 301 (Bankr.S.D.Ohio 2004). As of the petition date, all of the [secured party's] liens were perfected, and it enjoyed a superior priority over the [trustee] with respect to the Equipment. Accordingly, the [trustee's] priority was set as of [the date of filing of the petition], and, as exemplified in the Official Comments, even upon lapse of the UCC–1 Financing Statements, her priority is subordinate to the [secured party] . . .

*Id.* at 624 n 11.

*Mostoller* quite correctly notes that the trustee's avoidance power as to personal property under §544(a) is determined as of the date of the filing of the petition. On that date, the secured party's liens were properly perfected. The trustee could not prevail under §544(a). But §544(a) is not relevant. The question is not whether the trustee could ***avoid*** the lien under §544(a), but the effect of the ***lapse*** – which was due only to the passage of time – on the lien. In this case, it did not matter whether the court adopted the bankruptcy freeze rule. In either event, the secured creditor would prevail. If the freeze rule were applied, the priorities on the date of the filing of the petition

would not change during the pendency of the case.[10]  Lapse during the post-petition  period is of no

consequence.[11]  The secured creditor would continue to have priority over a subsequent lien creditor.

If the freeze rule were not applied, priority would be determined under Revised Article 9 as of the

date the matter was decided by the court.   Again, lapse during the post-petition period is of no

consequence.  Notwithstanding the lapse of the financing statement, the secured creditor's lapsed

financing statement remained effective as to existing lien creditors, which includes the chapter 7

trustee.  *See* Va. Code (1950) §8.9A-102(52)(C) (definition of lien creditor) and Va.Code (1950)

§8.9A-515(c).  The lapse is not retrospective as to the trustee.  Lapse would have a consequence for

a junior secured creditor because of the last sentence of §8.9A-515(c).  The lien created by a lapsed

financing statement as to a junior secured creditor is deemed never to have been perfected.[12]

*Chattanooga Choo-Choo Co.* involved a priority dispute between secured creditors.

Equitable Life Assurance Society filed a financing statement in 1976 which lapsed in 1981 because

no continuation statement was filed.  American National Bank and First Tennessee Bank filed a

second priority financing statement in 1981, within five years after  Equitable filed its first priority

financing statement which was then still effective.  Equitable argued that it remained in first position

because the two banks filed their financing statement while Equitable's financing statement was still

effective.  The version of the UCC in effect in Tennessee in 1981 "did not specifically say that the

security interest became unperfected against security interests perfected before the lapse."

---

[10]The freeze rule and avoidance under §544(a) are two distinct doctrines.  Care should be taken not to conflate them.

[11]Lapse during the pendency of a bankruptcy does have consequences after bankruptcy or when the collateral is no longer property of the estate.  Non-bankruptcy rules on the effect of a lapse in perfection would then control and a senior secured creditor may lose its priority to a junior secured creditor.

[12]The same benefit existed as to lien creditors under the prior version of Article 9 but was removed in the revision to UCC §9A-515(c).

18

*Chattanooga Choo-Choo Co.,* 98 B.R. at 799.  The then-current version of the UCC, the version in

force in 1986,  contained just such a provision.  Tenn.Code Ann. §47-9-403.  The Bankruptcy Court

held that the pre-1986 UCC provision made an exception for junior secured parties.  They moved

up in priority upon lapse of the senior secured party's financing statement.  It stated:

> The court agrees that the better rule is to make a lapsed financing statement ineffective against other financing statements filed before the lapse. The rule that lapse affects only transactions after the lapse would create too much confusion and too many factual disputes among secured creditors.
>
> Under this rule, the junior secured creditor who filed its financing statement before the lapse will move up in priority despite having actual notice or knowledge of the lapsed financing statement or the security interest. Lack of actual knowledge or notice is irrelevant.

*Chattanooga Choo-Choo Co.,* 98 B.R. at 799.  Despite the various prior versions of the UCC that

were discussed in the case, the construction is identical to the existing version.  *See* Va.Code (1950)

§8.9A-515(c).  It illustrates the effect of §8.9A-515(c) as between two secured creditors.  It did not

involve a bankruptcy trustee as to these security interests.

The last case is *Miller Brothers Lumber* where the Bankruptcy Court held that the debtor in

possession could avoid the security interest of a secured party whose financing statement lapsed

post-petition.  2012 WL 1601316 at *3.  The contest was between the chapter 11 debtor in

possession and the secured lender.  It was a case of first impression in North Carolina.  *Id.* at *3.  The

court gave literal effect to the second sentence of N.C. Gen.Stat. §25-9-515(c) which was buttressed

by the change from the prior version and the Official Comment.  The prior version provided that a

financing statement would continue to be effective for the duration of the bankruptcy proceeding and

sixty days afterward.  The Official Comment discussed the earliest version of 11 U.S.C. §362 which

enjoined filing continuation statements.  A mechanism was needed to preserve properly perfected

security interests in light of the automatic stay.  The solution was to add a tolling provision to the

19

UCC, the equivalence of the bankruptcy freeze rule.  Section 362 was later amended to remove filing

continuation statements from the protection of the automatic stay.  The Official Comment noted the

amendment, the consequent lack of necessity for a tolling provision and its removal.  It noted that

filing a continuation statement was easily accomplished and merely imposed the same requirement

on secured lenders in bankruptcy as outside bankruptcy.  But it also made an oblique reference to

the bankruptcy free rule.  The *Miller Brothers Lumber* court applied a straightforward reading to the

statute that was ostensibly supported by the Official Comment.  It did not discuss the reference to

the freeze rule or the UCC analysis of the continuation of a perfected security interest

notwithstanding the lapse of the financing statement that perfected it.  The court came to the

commonsense conclusion that if the instrument that perfected the lien ceased to be effective,

perfection of the lien must also cease.  It did not need to consider 11 U.S.C. §544(a) because it was

not an avoidance action.  It was an application of the state statute on priorities.  *Miller Brothers*

*Lumber* inferentially rejected the freeze rule and does not give effect to the last sentence of N.C.

Gen. Stat. 525-9-515(c).  Particularly with the latter, it is at odds with the other three cases.

## Conclusion

Revised Article 9 is somewhat opaque.  It assumes that once a security interest is perfected

it remains perfected as to existing secured parties and lien creditors, that is, its retrospective

effectiveness continues.[13]  The last sentence alters this result as to secured parties but not lien

creditors or trustees in bankruptcy.  In any event, the lapsed financing statement has no prospective

---

[13]*See* Va.Code (1950) §8.9A-515 Comment 3 (referring to retrospective application and giving examples of its effect) and Comment 4 (referring to bankruptcy).  *See also* Va.Code (1950) §8.9A-316 Comment 3 (clearer explanation of retrospective/prospective application).

effectiveness. There is nothing in Va.Code (1950) §8.9A-515(c) that says this expressly, but the last sentence has no meaning without that understanding. Nor does the 1972 change that eliminated lien creditors from the ambit of the last sentence have any meaning without that understanding. If this had been taken into account in *Miller Brothers Lumber,* the court would have been decided the case differently and the result would have been in accord with *Mostoller.*

This is a case where there is a contest between a single secured party and the debtor in possession who has the powers of a trustee. The secured creditor's security interest has priority over the debtor's interest. The debtor cannot avoid the secured creditor's security interest under §544(a) because as of the date of the filing of the petition, his lien was properly perfected. A §544(a) avoidance action looks to that point in time, not a later lapse. If the freeze rule were applicable, the priorities in effect on the date the petition was filed would continue throughout the case and the secured party would again prevail. If the priorities are re-evaluated throughout the case and a lapse in a financing statement were to have consequences, it is necessary to determine what those consequences would be under state law. Here, the applicable provision of the Virginia Code is §8.9A-515(c). With one exception, it continues the effectiveness of the perfected security interest as to all parties as of the date of the lapse as if no lapse had occurred, but not as to new parties who become secured creditors or lien creditors thereafter. That means that the secured party's perfected security interest continues as to the debtor. The one exception would be a pre-petition junior secured creditor. He would take priority over the creditor with the lapsed financing statement but, in this case, there is no such secured creditor.

Wells Fargo, N.A. f/b/o Jerome Guyant IRA continues to have a perfected security interest in this case, prior to the interests of the debtor. The objection to its proof of claim will be overruled. The prior Memorandum Opinion is withdrawn and the prior order will be vacated.

21

Alexandria, Virginia
July 30, 2013

/s/  Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

James P. Campbell
John P. Van Beek
John J. Brennan, III

18606

22